No. 23-1798

---

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

UNITED STATES OF AMERICA
*Appellee*

v.

OSMERLIN CARRION-CORDONES,
*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the District of Puerto Rico
Case No. 22-cr-394-FAB-6

---

BRIEF FOR DEFENDANT-APPELLANT

---

Ramon M. Gonzalez
USCA-FC 52462
P.O. Box 195493
San Juan, PR 00919-5493
(787) 593-8281/722-6930/
**Email: rmgonzalezesq@gmail.com**

*Attorney for Defendant-Appellant*
*Osmerlin Carrion-Cordones*

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . .                iii

Statement of Jurisdiction . . . . . . .            2

Issues Presented for Review. . . . . . .           3

Statement of the Case. . . . . . . .               3

Summary of the Arguments . . . . . .               23

Arguments . . . . . . . . .                        24

Conclusion. . . . . . . . .                        42

Prayer for Relief. . . . . . . .                   42

Certificate of Service . . . . . . .               43

Certificate of Compliance . . . . . .              44

Addendum . . . . . . . . .                         45

# TABLE OF AUTHORITIES

**Page**

<u>Federal Cases</u>

<u>Gall v. United States,</u> . . . . . 26, 37, 41
    552 U.S. 38, 51 (2007)

<u>Rita v. United States,</u> . . . . . 38
    551 U.S. 338, 356 (2007)

United States v. Arias-Mercedes, . . . 17
    901 F.3d 1, 8–9 (1st Cir. 2018)

<u>United States v. Bravo,</u> . . . . . 35, 38
    489 F.3d 1, 11 (1st Cir. 2007)

<u>United States v. Carrasco de Jesus,</u> . . . 25, 26, 41
    589 F.3d 22 (1st Cir. 2009)

<u>United States v. Castillo,</u> . . . . 17
    995 F.3d 14, 17–18 (1st Cir. 2021)

<u>United States v Colón-Cordero,</u> . . . 38
    91 F.4th at 50-51.

<u>United States v. Crespo-Ríos,</u> . . . 25
    787 F.3d 34, 37 n.3 (1st Cir. 2015)

<u>United States v. Davila-Gonzalez,</u> . . . 24
    595 F. 3rd 42, 47, (1st Cir. 2010)

<u>United States v. De la Cruz-Gutierrez,</u> . . . 18
    881 F.3d 221, 227 (1st Cir. 2018)

<u>United States v. González-Soberal,</u> . . . 28
    109 F.3d 64, 74 (1st Cir. 1997)

<u>United States v. Graciani,</u>   .   .   .   .   .   35, 39
  61 F.3d 70, 75 (1st Cir. 1995)

<u>United States v. Innarelli,</u>   .   .   .   .   .   25
  524 F.3d 286, 292 (1st Cir. 2008))

<u>United States v. López-Gil,</u>   .   .   .   .   28
  965 F.2d 1124, 1131 (1st Cir. 1992)

<u>United States v. Martin,</u>   .   .   .   .   .   24, 25, 26,
  530 F.3d 87, 92 (1st Cir. 2008)   38, 41, 42

<u>United States v. Murphy-Cordero,</u>   .   .   .   38
  715 F.3d 398, 402 (1st Cir. 2013).

<u>United States v. Pérez,</u>   .   .   .   .   .   17, 35, 39
  819 F.3d 541, 546 (1st Cir. 2016)

<u>United States v Perez-Delgado,</u>   .   .   .   37
  Case No. 22-1231,  Opinion of April 18, 20

<u>United States v. Rivera-Berríos,</u>   .   .   .   .   27, 38, 40
  968 F.3d 130, 134 (1st Cir. 2020

<u>United States v. Stone,</u>   .   .   .   .   .   25
  575 F.3d 83, 89 (1st Cir. 2009)

<u>United States v. Tom,</u>   .   .   .   .   .   35, 38
  330 F.3d 83, 95 (1st Cir. 2003)

# Constitution, Federal Statutes and Rules

18 United States Code Section 2 . . . 5, 6

18 United States Code Section 2331 . 2

18 United States Code Section 2237(a)(1) . 6

18 United States Code Section 3553 . . 19, 20, 22, 24, 20, 25, 26, 36, 37, 40, 42

18 United States Code Section 3583)(g) . 4

21 United States Code Section 881(a) . . 5

21 United States Code Section 952(a) . . 5

21 United States Code Section 960 . . 4, 5

21 United States Code Section 960 (b)(1 (B) . 4

21 United States Code Section 963 . . 4

28 United States Code Section 1291 . . 2

46 United States Code Section 70503 . . 5

46 United States Code Section 70503(1)(2) . 5

46 United States Code Section 70503(a)(1) . 4, 7

46 United States Code Section, 70506(b) . 4

Rule 4(b)(1)(A) of the Fed. Rules of Appellate
    Procedure.    .    .    .    .    .    2

## Other Authorities

U.S. Sentencing Guideline Section 1B1.3  .    9

U.S. Sentencing Guideline Section 2D1.1  .    7, 13, 21

U.S. Sentencing Guideline Section 3B1.2  .    9, 13, 14, 16, 27,
    33, 36, 38

No.  23-1798

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA
*Appellee*

v.

OSMERLIN CARRION-CORDONES,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Puerto Rico
Case No. 22-cr-394-FAB-6

BRIEF FOR DEFENDANT-APPELLANT

TO THE HONORABLE COURT:

**NOW COMES** defendant-appellant Osmerlin Carrion-Cordones, through counsel, and respectfully submits the following brief in support of his appeal.

# STATEMENT OF JURISDICTION

1.     This case arose from the prosecution of alleged offenses against the laws of the United States. The district court exercised jurisdiction under 18 U.S.C. Section 2331.

2.     This is a direct appeal from a final judgment of the United States District Court for the District of Puerto Rico entering judgment and sentence in a criminal case. This Court has jurisdiction over this appeal under 28 U.S.C. Section 1291.

3.     Under Federal Rule of Appellate Procedure 4(b) (1) (A), a criminal defendant must file a notice of appeal in the district court within 14 days after the later of (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal. In this case, judgment was entered on September 13, 2023 [Docket Entry (DE )[1] 217], twice amended on September 14, 2023 [DE 224 and DE 225], and the defendant filed an initial notice of appeal on September 14, 2023  [DE 222] and an amended notice of appeal on September 14, 2023 [DE 227].

---

[1] All docket entries ("DE") in case number 22-cr-394-6 (FAB) have been reproduced in the Appendix, pages ("pp") 1-13.

## ISSUES PRESENTED FOR REVIEW

A.  Whether the district court imposed a procedurally unreasonable sentence when it incorrectly applied USSG Section 3B1.2 and refused to ascribe to the defendant a mitigating role in the commission of the offense.

B. Whether the district court imposed a procedurally unreasonable sentence by failing to adequately explain the chosen sentence.

C. Whether the sentence imposed by the district court was substantively reasonable.

## STATEMENT OF THE CASE

On September 21, 2022, Mr. Carrion and seven (7) co-defendants were the subject of a Six-Count Indictment rendered by the District of Puerto Rico stemming from the same set of facts. **Count One** charges the defendants with conspiracy to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance, aboard a vessel subject to

the jurisdiction of the United States. All in violation of 46 U.S.C. §§ 70503(a)(1), 70506(b) and 21 U.S.C. § 960(b)(1) (B).

**Count Two** charges that on the same period of time, on the high seas, elsewhere and within the jurisdiction of this Court, Mr. Carrion and his co-defendants, aiding and abetting each other, did knowingly and intentionally possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance, aboard a vessel subject to the jurisdiction of the United States. All in violation of 46 U.S.C.§ 70503(a)(1) and 21 U.S.C. § 960(b)(1)(B).

**Count Three** charges that during the same period of time, from the Dominican Republic and elsewhere, Mr. Carrion and his codefendants conspired to import into the United States, five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled Substance. All in violation of 21 U.S.C. §§ 952(a), 960 and 963.

**Count Four** charges the defendants, aiding and abetting each other, intentionally and knowingly attempted to import into the United States, five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance. All in violation 21 U.S.C. §§ 952(a), 960 and 18 U.S.C. § 2.

**Count Five** charges the defendants did knowingly and intentionally aiding and abetting each other to commit an offense defined in 46 U.S./C. & 70503, that is, to jettison property subject to forfeiture under 21 U.S.C. § 881(a) from a vessel subject to the jurisdiction of the United States. All in violation of 46 U.S.C. §70503(1)(2) and 18 U.S.C. §2.

**Count Six** charges the defendants, aiding and abetting each other, while being masters, operators, or persons in charge of a vessel subject to the jurisdiction of the United States, did knowingly and unlawfully fail to obey an order by an authorized Federal law enforcement officer to heave to that vessel. All in

violation of Title 18 § 2237(a)(1) and 18 U.S.C. § 2. (*Appendix, pp 13-18*)

On June 1, 2023, Mr. Carrion appeared for Rule 11 proceedings and entered a straight plea of guilty to all counts of the indictment. (*See Transcripts of Change of Plea Hearing at Appendix, pp 20-46, DE 139)* The court ordered the preparation of a Presentence Investigation Report.

Mr. Carrion was interviewed by a US Probation Officer as part of the preparation of the Presentence Investigation Report ("PSR"). With respect to acceptance of responsibility, the PSR related the following:

**Acceptance of Responsibility:**

22.     On July 20, 2023, the defendant was interviewed using the Video-Teleconference Equipment located at the U.S. Courthouse in San Juan, PR, in the presence of counsel. At the time, the defendant accepted responsibility for committing the offense.

23.     Mr. Carrion averred that he wanted to relocate to Puerto Rico to work in construction in Puerto Rico and subsequently travel to New York to reside with his brother who is a truck driver. Reportedly, his brother sent him $1000 USD via wire transfer to Dominican Republic. With this money, he contacted a human smuggler aka "Elias" who agreed to coordinate a trip to Puerto Rico via yawl vessel. Upon

arriving at the beach on August 15, 2022, he noticed there were other passengers and the presence of bales which he believed there was a possibility of drugs inside. However, Mr. Carrion indicated that after paying the $1,000 for the trip he did not want to lose the opportunity. At the end, his intuition was right.

24.     Mr. Carrion is repentant for committing the offense as he now is incarcerated and his family is suffering for his absence, specially his four children. He wishes to be released as soon as possible to reunite with his family and to support them financially.

*Sealed Supplemental Appendix to the Brief, p 8, paragraphs 22-24.*

The Presentence Investigation Report concluded that under USSG §2D1.1, a violation of 46 U.S.C. § 70503(a)(1) involving 50 but less than 150 kilograms of cocaine, specifically 95 kilograms of cocaine, aboard a vessel subject to the jurisdiction of the United States, a base offense level of **34** is established. After deducting three levels for acceptance of responsibility, a Total Offense Level of 31 was determined. (*Sealed Supplemental Appendix to the Brief, pp 8-9) Since* Mr. Carrion has no criminal history points (*Sealed Supplemental Appendix to the Brief, p 9, paragraph 42)* his Criminal History Category is I. Based upon a total offense level of 31 and a criminal history category of I, the guideline imprisonment range is 108 to 135 months. There is a

mandatory minimum sentence of 10 years of imprisonment.

(*Sealed Supplemental Appendix to the Brief, p 12, paragraph 65.*

The PSR contains no Adjustment for Role in the Offense.

(*Sealed Supplemental Appendix to the Brief, p 9, paragraph 31*).

The PSR, however, contains the following:

### PART G. SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

84. Although this case involved a substantial number of drugs, the Court may consider that this type of smuggling venture usually entails large amounts of controlled substances, yet the individuals involved rarely benefit of the proceeds, and their participation is limited in scope and understanding.

85. In terms of the defendant's personal characteristics. He is a first-time offender, has no prior illegal entries or deportation, and will likely be deported to his country after sentence.

*Sealed Supplemental Appendix to the Brief, p 14, paragraphs 84-85)*

### A. Defendant's Sentencing Memorandum.

Prior to the sentencing hearing, defense counsel filed a Sentencing Memorandum highlighting several sentencing factors included in the PSR and discussing Mr. Carrion's personal history and characteristics. (*See Defendant's Sentencing Memorandum,*

*Appendix, pp 47-59)*. In addition, counsel argued for a mitigating role adjustment under USSG §3B1.2 (b).

Counsel referred to USSG §3B1.2 (b) which provides that (a) if the defendant was a minimal participant in any criminal activity, decrease the offense level by 4 levels; (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

Counsel next referred to Application Note 3 (A) to USSG Section 3B1.2, related to the applicability of the adjustment for minor role, which reads as follows:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

Counsel then cited Application Note 3 (C) which includes the criteria the court should consider in deciding as to mitigating role, including a none exhaustive list of factors to be considered by the court when deciding as to the applicability of the minor role adjustment:

(C)  Fact-Based Determination.—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)      the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)      the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)      the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)      the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)    the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable    role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

Applying the criteria, counsel proceeded to discuss the facts related to Mr. Carrion's participation in the commission of the offense as follows:

### (i)The degree to which the defendant understood the scope and structure of the criminal activity.

Mr. Carrion has accepted responsibility and has explained that he wanted to relocate to Puerto Rico to work in construction and subsequently travel to New York to reside with his brother who is a truck driver. His brother sent him $1000 USD via wire transfer to Dominican Republic. With this money, he contacted a human smuggler who agreed to coordinate a trip to Puerto Rico via yawl vessel. Upon arriving at the beach, he noticed there were other passengers and the presence of bales. At that time, it was explained to him that narcotics were to be transported to Puerto Rico and that his task was to help move the narcotics. Mr. Carrion indicated that after paying the $1,000 for the trip he did not want to lose the opportunity and decided to go ahead with the trip.

Mr. Carrion's knowledge as to the scope and structure of the criminal activity is practically none. He noticed the presence of narcotics once he arrived to the beach area from where they departed. He decided to continue with his plan to travel to Puerto Rico because he had already paid for the trip.

### (ii)     The degree to which the defendant participated in planning or organizing the criminal activity.

Mr. Carrion did not participate in the planning or organizing the criminal activity. He learned about the drug venture once he arrived to the beach when he saw the bales. He did not own the vessel involved in the offense; he did not provide funds or any other asset in furtherance of the venture.

### (iii)     The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority.

Mr. Carrion did not exercise decision-making authority or influenced the exercise of decision-making authority in the commission of the offense. By the time he arrived at the beach area and saw the bales of cocaine, all the planning had been performed and he was not present nor aware of said planning.

### (iv)     The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts.

The nature and extend of Mr. Carrion's participation in the commission of the offense was limited, peripheral. Once he was explained that

narcotics were to be transported in the vessel and that his participation would be to help in the movement of the bales, he decided to go ahead with the trip because he had already paid for the transportation and did not want to lose his money. He had no other role nor had any discretion in performing any act. He was not the owner of the vessel where the narcotics were been carried, he had no discretion to whom the narcotics were to be delivered and further distribute; no discretion as to the final price of the narcotics. He was totally ignorant of the nature and extend of the smuggling venture that was taking place.

(v) **The degree to which the defendant stood to benefit from the criminal activity.**

Mr. Carrion not only was not paid, nor promised to be paid, any compensation to participate in the drug venture; he paid 1000 USD for what his intention was at that moment: for the transportation to come over to Puerto Rico. He did not stand to benefit from the criminal activity other than the benefit he was going to receive by being transported to Puerto Rico. He did not have a proprietary interest in the criminal activity and therefore should be considered for an adjustment under this guideline.

*(Appendix, pp 51-55.)*

Counsel argued that applying said factors to Mr. Carrion's participation in the offense charged leads to the conclusion that he was a minor participant and, therefore, pursuant to USSG Section 2D1.1(a)(5)(ii), his Base Offense Level of 34 should be reduced 3 levels, to level 31. Under Application Note 6 of USSG §3B1.2 (b),

the court also shall apply the appropriate adjustment under this guideline, that is, the 2-level decrease under USSG §3B1.2 (b), for a Total Offense Level of 29. After deduction 3 levels for acceptance of responsibility, a Total Offense Level of 26 is determined. A Total Offense Level of 26 combined with a Criminal History Category of I yield a guideline imprisonment range of 63 to 78 months. Although there is a statutory minimum of 120 months, since Mr. Carrion complied with the safety valve provisions, two (2) additional levels should be deducted from his total offence level, to Level 24, which yields a guideline imprisonment range of 51 to 63 months. *(Appendix, pp 54-55)*

Defense counsel further argued that a sentence of no more than 51 months of imprisonment is a reasonable sentence and not more than necessary to comply with the goals of sentencing, considering the nature and circumstances of Mr. Carrion's role and participation in the commission of the offense, and his personal history and characteristics. Counsel proceeded to highlight certain aspects of Mr. Carrion's personal history and characteristics, including, that his parents resided together until he was 5 years

old, when his father emigrated to Puerto Rico; at the age of 12, his mother established a relationship with a man who constantly mistreated him and assaulted his mother in front of all the children for a period of 2 years; Mr. Carrion grew up in extreme poverty and often his family would have one meal a day during the afternoons. (*See Appendix, pp 55-58)*

Counsel also referred to the fact that Mr. Carrion is the father of four (4), ages 11, 9, and 5; Mr. Carrion's long history of gainful employment; that prior to his arrest he had a severe dependence to alcohol. (*See Sealed Supplemental Appendix to the Brief, page 11, paragraph 59).* Finally, counsel alluded to Mr. Carrion' PSR interview during which accepted responsibility for his participation in the offense and explained the circumstances that led to his limited involvement and expressed his repentance. He also expressed his concern of the fact that his family is suffering for his absence, specially his four children, and that he is unable to support them financially. (*See Sealed Supplemental Appendix to the Brief, page 8, paragraph 24)*

Defense counsel argued that based on Mr. Carrion's personal history and characteristics, a sentence **of no more than 51 months of imprisonment fully** accounts for all the offense conduct in this case, and is sufficient but not more than necessary to comply with the goals of sentencing, considering the nature and circumstances of the offense, Mr. Carrion's peripheral role in the commission of the offense, and the fact that this is his first arrest and conviction. *(See Appendix p 58)*

B. <u>Government's Sentencing Memorandum.</u>

In opposition to defendant's objections to the PSI Report and sentencing memorandum, the government filed its own sentencing memorandum. (*See copy of the government' Sentencing Memorandum at Appendix, pp 60-70)*. After referencing caselaw related to the standard to determine whether a defendant is entitled to a mitigating role adjustment and the non-exhaustive factors contained in USSG § 3B1.2 cmt. n.3(C) , the government alluded to the specific facts of the case as follows:

> Here, the Defendant played a significant role in the drug-trafficking endeavor to import hundreds of kilograms of cocaine from the Dominican Republic to

Puerto Rico. The Defendant was one of the crewmembers on board a boat with approximately 95 kilograms of cocaine. This is an enormous amount of drugs that the Defendant was trying to smuggle into the United States and was trusted with (picture of drugs seized below).

The 95 kilograms of cocaine that the Defendant was entrusted with have a value here in Puerto Rico of about $1.33 to 1.9 million dollars.[2] Thus, the Defendant was entrusted with a valuable load from a transnational drug-trafficking organization. As part of his guilty plea, he admitted to possessing the drugs with intent to distribute them knowingly and intentionally. He also eventually admitted he knew about the bales containing the drugs before boarding the boat and helped with the movement of the bales. (ECF No. 188 at 6-7). He embarked on a hazardous, multi-day journey, with a small crew to transport wholesale quantities of cocaine from the Dominican Republic to Puerto Rico. "When a person undertakes to provide material assistance in transporting a large quantity of drugs as a member of a tiny crew in a hazardous voyage at sea, it ordinarily will not be clear error for the sentencing court to refuse him a mitigating role adjustment." United States v. Castillo, 995 F.3d 14, 17–18 (1st Cir. 2021) (affirming the district court's denial of minor role adjustment for defendant on board vessel with 900 KGs cocaine); United States v. Arias-Mercedes, 901 F.3d 1, 8–9 (1st Cir. 2018) (affirming the district court's denial of minor role adjustment for defendant on board vessel with 72.5 KGs cocaine); United States v. Perez, 819 F.3d 541, 546 (1st Cir. 2016) (affirming the district court's denial of minor role adjustment for defendant on board vessel with 1,056 KGs cocaine). Given that he was part of a small crew on board the boat, he must have performed significant tasks in furtherance of the venture.

The defendant played a significant role in an international drug-trafficking organization and endeavor. Such a drug-trafficking endeavor—to smuggle wholesale quantities of drugs from Latin America, in this case the Dominican Republic, to the United States, through maritime routes— could not function without individuals such as the Defendant, who have the willingness to get on a small vessel with the drugs on a long and perilous journey through the Caribbean.

The significant quantity and value of the 95 kilograms of cocaine that the Defendant was entrusted with—having a value of about $1.33 to 1.9 million dollars in Puerto Rico—show that he has significant trust of a drug-trafficking organization that works to import wholesale quantities of cocaine. Such an international drug-trafficking organization requires individuals like the Defendant, who has the trust of the transnational drug-trafficking organization and the willingness to be an asset on such a dangerous voyage, to successfully move wholesale quantities of drugs across the Atlantic into the United States.

In sum, the Defendant's role was essential to this drug-trafficking venture and the totality of the circumstances do not show that he is entitled to a mitigating role adjustment in this case. The First Circuit has repeatedly affirmed denials of mitigating-role adjustments to drug couriers. See United States v. De la Cruz-Gutierrez, 881 F.3d 221, 227 (1st Cir. 2018) (collecting cases). In this case, the Defendant should not receive a role reduction.

*(Appendix, pp 63-66)*

## C. The Sentencing Hearing.

On September 13, 2023, Mr. Carrion appeared for his sentencing hearing. *(See copy of Transcripts of Sentencing Hearing at Appendix, pp 71-82)* The court initially indicated that he had read counsel's sentencing memo. Defense counsel then highlighted the mitigating role requests made in his sentencing memorandum indicating that such a determination is a fact-intensive matter the reason why he into the facts of the case to conclude that Mr. Carrion's participation is a minor, which would bring the guideline range calculation to 51 to 63 months. Counsel requested 51 months of imprisonment, which represents the lower end of the applicable guideline range. (*Appendix pp 72-73*)

In addition to the issue of mitigating role, counsel argued that even if the Court is not willing to adopt the request for the minor role adjustment, Mr. Carrion's 3553 factors, including the fact that he is the father of three children who have always depended on him for the support, his long history of employment, among other factors included in the PSR, should be taken into consideration even if not to conclude that Mr. Carrion's role was a minor role, but to conclude that his role in the offense was

peripheral and a further reduction of the sentence should be contemplated. Counsel reiterated his request for a sentence of 51 months. *(Appendix, p 73)*

The government opposed the minor role reduction indicating that Mr. Carrion helped carry a huge quantity of kilograms of cocaine on a multi-day dangerous journey from the Dominican Republic to Puerto Rico; that the 95 kilograms of cocaine that were brought onboard this boat is a wholesale amount of kilograms of cocaine that's worth 1.33 to $1.9 million, indicating that the defendant is a person of trust, that would be entrusted with such a valuable drug load. In addition, the government indicated that Mr. Carrion himself admitted that he helped to move the bales and load the boat on its way to Puerto Rico. (*Appendix, p 75*)

The government then referred to what it considers to be the appropriate guideline range, indicating that the total offense level is 29 based on the base offense level of 34, a three-level reduction for acceptance of responsibility; and a two-level reduction for complying with 3553(f) which would produce a guideline range of 87 to 108 months. The government indicated that

"Recognizing the mitigating factors that this defendant presents, we recommend a low-end guideline sentence of 87 months. But anything below that, Your Honor, would not adequately reflect the seriousness of the offense and provide for adequate deterrence for this type of offense. *(Appendix, p 74)*

Mr. Carrion addressed the court indicating he knew he had made a mistake for which he has to repay to society and that once he pays society   he would like to return to his country, to ask his children for forgiveness for what he did; that he wanted to apologize to his kids for the harm he has caused them, and that he wants to return to work hard on their behalf, trusting in God and then in the court. (*Appendix, pp 74-75)*

The court then proceeded to impose sentence. After referring to the counts to which Mr. Carrion pled, the court then proceeded as follows:

> Based on the provisions of Guideline Section 2D1.1(a)(5) and 2D1.1(c)(3), a base offense level of 34 has been determined because Mr. Carrion has been convicted of conspiring to possess with intent to distribute and possessing with intent to distribute, and conspiring to import cocaine into the United States, and attempting to import cocaine into the United States, and jettisoning

drugs which are from the vessel subject to the jurisdiction of the United States, which is property subject to forfeiture, and aiding and abetting in failure to heave the vessel when ordered to do so.

Because Mr. Carrion complied with the provisions of Title 18, United States Code Section 3553(f) and Sentencing Guideline Section 5C2.1(a), the base offense level is decreased by two levels. Because Mr. Carrion timely accepted responsibility for his offenses, however, his offense level is reduced by three more levels pursuant to Guideline Section 3E1.1(a) and 3E1.1(b). Mr. Carrion admitted that he moved the bales of cocaine and assisted in loading the boat.

Based on a total offense level of 29 and a Criminal History Category of I, the guideline imprisonment range for Mr. Carrion's offense is from 87 to 108 months. There is a fine range of 30,000 to $10 million, plus a supervised release term of from two to five years for Counts One through Four, and one year to three years for Counts Five and Six. The probation officer has correctly adjusted the guideline computations, and the presentence investigation report satisfactorily reflects the components of Mr. Carrion's offenses by considering their nature and circumstances.

The Court has also considered the other sentencing factors set forth in Title 18, United States Code Section 3553(a), the presentence investigation report, the plea agreement, the sentencing memoranda filed on behalf of Mr. Carrion and by the Government, arguments by Counsel and the Government, and Mr. Carrion's allocution.

Mr. Carrion is 30 years old, a Dominican national, and has the equivalent of a 9th grade education. Reportedly, he was employed in the hotel industry prior to his arrest for his offenses. He has a history of using alcohol in excess. **Today Mr. Carrion has requested a sentence of**

**51 months, arguing that he was a minor participant. The Court dismisses that argument**. The Government has requested a sentence of 87 months. The Court finds that the sentence recommended by the Government reflects the seriousness of Mr. Carrion's offenses, promotes respect for the law, protects the public from additional crimes by Mr. Carrion, and addresses the issues of deterrence and punishment.

Accordingly, it's the judgment of the Court that Osmerlin Carrion-Cordones is committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 87 months as to each count, to be served concurrently with each other.

Upon release from confinement, Mr. Carrion shall be placed on supervised release for a term of five years as to Counts One through Four, and three years as to Counts Five and Six, to be served concurrently with each other…

*Appendix, p 76, line 4 to p 78, line 9), (Addendum, pp 1-8) (Emphasis ours)*

This appeal ensued.

## SUMMARY OF THE ARGUMENTS

The sentence imposed by the district court was procedurally and substantively unreasonable.

By failing to grant appellant a minor role reduction, the district court improperly calculated his Guideline Sentencing Range and, thus, his sentence is procedurally unreasonable.

23

The court abused its discretion and imposed a procedurally unreasonable sentence by failing to adequately explain the chosen sentence. The court failed to consider the 18 U.S.C. § 3553(a) factors related to Mr. Carrion's personal history and characteristics and only concentrated on the punitive and deterrence factors of the sentence imposed.

## ARGUMENTS AND AUTHORITIES

I. <u>THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING A PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE SENTENCE.</u>

### A. Standard of Review and Issue Preservation.

In reviewing a sentence on appeal, the First Circuit has indicated that such review is aimed at ensuring that it is both procedurally sound and substantively reasonable. <u>United States v. Martin</u>, 530 F.3d 87, 92 (1st Cir. 2008); <u>United States v. Davila-Gonzalez</u>, 595 F. 3rd 42, 47, (1st Cir. 2010) Procedural unreasonableness includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to

adequately explain the chosen sentence." United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009) (quoting United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008)). A claim of procedural unreasonableness in sentencing is reviewed, generally, for **abuse of discretion**. United States v. Carrasco-De-Jesús, 589 F.3d 22, 26-27 (1st Cir. 2009); Martin, 520 F.3d at 92. In United States v. Crespo-Ríos, 787 F.3d 34, 37 n.3 (1st Cir. 2015) this court explained that "[t]he lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence."

If the court determines that the district court committed no significant procedural error, it then considers the substantive reasonableness of the sentence imposed under an abuse of discretion standard. When conducting a review of the substantive reasonableness of the sentence, this court has indicated that it will consider the **totality of the circumstances** including the extend of any variance from the guideline sentencing range. This court has indicated that "[T]the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible overall result"

Martin, 520 F.3d at 96. Reasonableness review is the "functional equivalent" of review for abuse of discretion. United States v. Carrasco de Jesus, 589 F.3d 22 (1st Cir. 2009), Gall v. United States, 552 U.S. 38, 51 (2007).

In this case, in addition to the issue of mitigating role, counsel argued that even if the Court was not willing to adopt the request for the minor role reduction, Mr. Carrion's 3553 factors, combined with his peropheral role in the commission of the ofense, should be taken in consideration for a reduction of the sentence

Mr. Carrion preserved the issues raised in this appeal in his sentencing submissions to the court and at the sentencing hearing. A substantial portion of Mr. Carrion's Sentencing Memorandum was devoted to the issue of his role in the offense and his request for a minor role adjustment. *(See Appendix, pp 50 to 54)* Immediately after the court imposed the sentence, counsel objected both procedurally and substantively emphasizing that it was excessive and unreasonable. (*Appendix, p 80, ll 18-24* ). See *United States v. Rivera-Berríos*, 968 F.3d 130, 134 (1st Cir. 2020)

(concluding that the defendant preserved his procedural claim below because "appellant's counsel made clear" not only "that he believed that the sentence was `excessive,'" but also "that the court had not articulated any cognizable grounds that would support an upward variance.")

### B. By Failing to Grant Appellant a Minor Role Reduction, the District Court Improperly Calculated his GSR and, thus, His Sentence is Procedurally Unreasonable.

The Guidelines allow a court to award a two-level reduction to a defendant who was a minor participant in the criminal activity in question. *See U.S.S.G. § 3B1.2.* As a result of Amendment 794, effective November 1, 2015, "when determining mitigating role, the defendant is to be compared with other participants `in the criminal activity'" and not with the typical offender. *U.S.S.G. App. C Supp., Amend. 794 (effective Nov. 1, 2015)*. A defendant will "only prevail on appeal by demonstrating that the district court's determination as to his role in the offense was clearly erroneous." *United States v. González-Soberal*, 109 F.3d 64, 74 (1st Cir. 1997) (quoting *United States v. López-Gil*, 965 F.2d 1124, 1131 (1st Cir. 1992)).

Mr. Carrion submits that the district court clearly erred when it denied his request for a minor role adjustment without even making the minimum effort of weighing and analyzing Mr. Carrion's arguments. In his Sentencing Memorandum, defense counsel laid out the reasons why a minor role adjustment should be granted referencing Application Note 3 (C) which indicates that such a determination is based on the totality of the circumstances, a determination that is heavily dependent upon the facts of the case. When Mr. Carrion was interviewed by the Probation Officer, he explained that he wanted to relocate to Puerto Rico to work in construction and subsequently travel to New York to reside with his brother who is a truck driver. His brother sent him $1000 USD via wire transfer to the Dominican Republic. With this money, he contacted a human smuggler who agreed to coordinate a trip to Puerto Rico via yawl vessel. Upon arriving at the beach, he noticed there were other passengers and the presence of bales. At that time, it was explained to him that narcotics were to be transported to Puerto Rico and that his task was to help move the narcotics.

Mr. Carrion indicated that after paying the $1,000 he did not want to lose the opportunity and decided to go ahead with the trip.

Counsel argued that Mr. Carrion's knowledge as to the scope and structure of the criminal activity is practically none; that he did not participate in the planning or organizing the criminal activity; that he learned about the drug venture once he arrived to the beach when he saw the bales; when he arrived to the beach, the rest of the other participabnts in the trip were already at the place; he did not own the vessel involved in the offense; he did not provide funds or any other asset in furtherance of the venture; and that he did not exercise decision-making authority or influenced the exercise of decision-making authority in the commission of the offense. By the time Mr. Carrion arrived at the beach area and saw the bales of cocaine, counsel argued, all the planning had been performed and he was not present at nor aware of said planning.

The nature and extend of Mr. Carrion's participation in the commission of the offense was limited, peripheral.  Once he was explained that narcotics were to be transported in the vessel and that his participation would be to help in the movement of the

bales, he decided to go ahead with the trip because he had already paid for the transportation and did not want to lose his money. He had no other role nor had any discretion in performing any act. He was not the owner of the vessel where the narcotics were been carried, he had no discretion to whom the narcotics were to be delivered and further distribute; no discretion as to the final price of the narcotics. He was totally ignorant of the nature and extend of the smuggling venture that was taking place.

Mr. Carrion not only was not paid, nor promised to be paid, any compensation to participate in the drug venture; he paid 1000 USD for what his intention was at that moment: for the transportation to come over to Puerto Rico. He did not stand to benefit from the criminal activity other than the benefit he was going to receive by being transported to Puerto Rico, for which he had already paid. He did not have a proprietary interest in the criminal activity and therefore should have been considered for a role adjustment.

His involvement in the commission of the offense was a last-minute decision he made to avoid losing the money he had already

paid for the trip to Puerto Rico; his offense conduct was that of a deck hand to move the packages. He had no knowledge of what had taken place before he realized that the narcotics were to be transported, nor was he explained anything of what was going to happen with the illegal cargo. All he had to do was to follow the instructions as to where to move the packages, without any further explanation either before or after he arrived to the vessel.

Mr. Carrion, as well as co-defendant Jayson Chavez, paid for transportation to Puerto Rico and they realized the true nature of the trip when they arrived to the beach area minutes before departing . Their poartcipation in the commission of the offense was substantially less than the other defendants, who knew about the drug venture in advance of traveling to the beach area and boarding the vessel; and much less than the other particpants who organized the trip, supervised the trip and the venture, piloted the vessel, and in general knew well in advance details of the conspiracy .

US Probation precisely recognized Mr. Carrion's peripheral role in te coommission of the offense when it included the following remark at the end of the PSR:

> 84. Although this case involved a substantial amount of drugs, the Court may consider that this type of smuggling venture usually entails large amounts of controlled substances, yet the individuals involved rarely benefit of the proceeds, and their participation is limited in scope and understanding.

> 85. In terms of the defendant's personal characteristics. He is a first-time offender, has no prior illegal entries or deportation, and will likely be deported to his country after sentence.

*(Sealed Supplemental Appendix to the Brief, p. 14, paragraph 84)*

The govermnment's arguments in opposing a minor role reduction misses the point. The goveenmnet argued that Mr. Carrion played "a significant role " in the drug-trafficking endeavor to import "hundreds of kilograms of cocaine" from the Dominican Republic to Puerto Rico because "he was one of the crew members on board a boat with approximately 95 kilograms of cocaine", "an enormous amount of drugs", with a value in Puerto Rico of about $1.33 to 1.9 million dollars and the defendant was entrusted with a valuable load from a transnational drug-

trafficking organization; and that he also eventually admitted he knew about the bales containing the drugs before boarding the boat and helped with the movement of the bales. The government further argued that Mr. Carrion had embarked on a hazardous, multi-day journey, with a small crew to transport wholesale quantities of cocaine from the Dominican Republic to Puerto Rico and cited case law in support of the proposition that becaseu a person undertakes to provide material assistance in transporting a large quantity of drugs as a member of a tiny crew it ordinarily will not be clear error for the sentencing court to refuse him a mitigating role adjustment. Given that he was part of a small crew on board the boat, the govenmnet further argued, he must have performed significant tasks in furtherance of the venture. *(Appendix, pp 65-68)*

The government's arguments, however, diverge from the clear directive of Application Note 3 (A) to USSG Section 3B1.2, which expressley states that "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under

this guideline if he or she is substantially less culpable than the average participant in the criminal activity" and that the detrmination of whether to apply the adjustment for minor role is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

Furthermore, contrary to the government's arguments, the unconstested facts of the case at bar show that Mr. Carrion did not play "a signficant role" in the offense; that the offense did not involve "hundreds of kilograms of cocaine" but only 95 kilos, not "an enormous amount of drugs"[2] ; the defendant was not "entrusted with a valuable load from a transnational drug-trafficking organization" ; and that since he had already paid to be smuggled to Puerto Rico, he decided at the very last minute to go head with the trip and agreed to help in moving the packages. There is no factual basis for the government's argument  that Mr.

---

[2] It t is precisely the reason why the PSR contains the following remark cited before: "Although this case involved a substantial amount of drugs, the Court may consider that this type of smuggling venture usually entails large amounts of controlled substances, yet the individuals involved rarely benefit of the proceeds, and their participation is limited in scope and understanding" (*See Sealed Supplemental Appendix to the Brief, page 14, paragraph 84)*

Carrion " must have performed significant tasks in furtherance of the venture". The govennmet's arguments are simply based mostly on stacking speculations over speculations.

This court has indicated that determining a defendant's role in an offense is a fact-specific inquiry and that this court "rarely reverse a district court's decision regarding whether to apply a minor role 226*226adjustment." *United States v. Bravo*, 489 F.3d 1, 11 (1st Cir. 2007) (citing *United States v. Tom*, 330 F.3d 83, 95 (1st Cir. 2003)); see also *United States v. Pérez*, 819 F.3d 541, 546 (1st Cir. 2016) ("[B]attles over a defendant's status . . . will almost always be won or lost in the district court." (second alteration in original) (quoting *United States v. Graciani*, 61 F.3d 70, 75 (1st Cir. 1995))). Yet the court, when confronted with the specific facts raised by the defendant as to his role in the offense, offered no explanation to the sentence chose. It simply rejected the argument by simply indicating "The Court dismisses that argument." (*See Appendix, page 77, paragraph 23)*

Furthermore, in the Statement of Reasons, at page 6, the court surprisingly inserted the following:

## VIII. ADDITIONAL BASIS FOR THE SENTENCE IN THIS CASE *(If applicable)*

Defendant requested an adjustment for Role in the Offense under USSG §3B1.2 (b). However, there was no documented evidence that he had a minor role in the offense. Since Defendant complied with the provisions set forth in Title 18, U.S.C. §3553(f)(1)-(5) and USSG §5C1.2 (a)(1)-(5), a two (2) level reduction has been applied, yielded a total offense level of 29 and a CH of 1.

*(See Sealed Supplemental Appendix to the Brief, p 23)*

As explained before, and contrary to the court's assertions, the record does contain sufficient facts that show Mr. Carrion's peripheral role in the commission of the offense, facts that the court should have considered as part of its duty of crafting a reasonable sentence.

### C. By Failing to Adequately Explain the Chosen Sentence, the court abused its discretion and thus the Sentence Imposed is Procedurally Unreasonable.

The court abused its discretion and imposed a procedurally unreasonable sentence by failing to adequately explain the chosen sentence. The district court made no effort to provide any rationale in support of the sentence imposed denying the defendant's request for a mitigation role adjustment. The court

likewise ignored all 3553 factors brought by the defense related to Mr. Carrion's personal history and characteristics. A district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50, 128 S.Ct. 586. This court has referred to this tenet as "Sentencing-Law-101 fundamental", that a court must adequately explain the reasons for its chosen sentence. *See 1st Circuit Opinion in the case of US v RICARDO PEREZ-DELGADO*, Case No. 22-1231 of April 18, 2024, page 2. "A sentencing court is obligated to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). This obligation serves multiple purposes: it not only gives the defendant (and the public) an understanding of why the defendant is receiving a particular sentence, but it also "allow[s] for meaningful appellate review" and "promote[s] the perception of fair sentencing." *Gall*, 552 U.S. at 50. See 1st Circuit Opinion in the case of *US v RICARDO PEREZ-DELGADO*, Case No. 22-1231 of April 18, 2024, page 14.

In *US v RICARDO PEREZ- DELGADO*, Case No. 22-1231,

of April 18, 2024, pages 14-15, the court further stated the follwing:

> Nevertheless, explaining the reasons for a particular sentence is more of an art than a science. On the one hand, the explanation must highlight "the primary factors driving the imposed sentence," but on the other hand, it need not be "precise to the point of pedantry." *Rivera-Berríos*, 968 F.3d at 134 (citations omitted). Basically, context is the name of the game here, because "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends on the circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007); see also *Colón-Cordero*, 91 F.4th at 50-51 ("Just what kind of explanation is needed depends on the context of each individual case."). For example, a sentence that sits comfortably within the GSR "requires a less elaborate explanation." *United States v. Murphy-Cordero*, 715 F.3d 398, 402 (1st Cir. 2013).

As stated before, counsel explained in details the basis for the request for a mitigationg role reduction referring to the specific facts of the case using Application Note 3 ( C) to USSG Section 3B1.2 as the framework. This court has indicated that determining a defendant's role in an offense is a fact-specific inquiry and that this court " rarely reverse a district court's decision regarding whether to apply a minor role 226*226adjustment." *United States v. Bravo*, 489 F.3d 1, 11 (1st Cir. 2007) (citing *United States v. Tom*, 330 F.3d 83, 95 (1st

Cir. 2003)); see also *United States v. Pérez*, 819 F.3d 541, 546 (1st Cir. 2016) ("[B]attles over a defendant's status . . . will almost always be won or lost in the district court." (second alteration in original) (quoting *United States v. Graciani*, 61 F.3d 70, 75 (1st Cir. 1995))). Yet the court, when confronted with the specific facts raised by the defendant as to his role in the offense, offered no explanation to the sentenced chose. It simply rejected the argument by simply indicating "The Court dismisses that argument." (*Appendix, p 77, paragraph 23*)

As mentioned before, even the following suggestion by US Probation failed to move the court to provide some explanation. to its sentence:

### PART G. SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

84. Although this case involved a substantial amount of drugs, the Court may consider that this type of smuggling venture usually entails large amounts of controlled substances, yet the individuals involved rarely benefit of the proceeds, and their participation is limited in scope and understanding.

85. In terms of the defendant's personal characteristics. He is a first-time offender, has no prior illegal entries or deportation, and will likely be deported to his country after sentence.

*(Sealed Supplemental Appendix to the Brief, p 14, paragraph 84)*

For all practical purposes, the court took the applicable guideline range as mandatory and imposed a sentence without any further consideration, whether it be the 3553 facts related to the defendant's personal history and characteristics, his limited role in the offense (even if the court disagreed with applying the minor role adjustment). Again, although the court need not be "precise to the point of pedantry" *Rivera-Berríos*, 968 F.3d at 134, the court should have elaborated on the sentence imposed and at least address the mitigating role adjustment requested by the defense.

The court also abused its discretion and imposed a procedurally unreasonable sentence by failing to adequately explain the chosen sentence considering Mr. Carrion's mitigating factors.

### D. The Sentence is Substantively Unreasonable.

When conducting a review of the substantive reasonableness of the sentence, this court has indicated that it will consider the totality of the circumstances including the extend of any variance from the guideline sentencing range. This court has indicated that "[T]the linchpin of a reasonable sentence is a plausible sentencing

rationale and a defensible overall result" <u>Martin</u>, 520 F.3d at 96. Reasonableness review is the "functional equivalent" of review for abuse of discretion. <u>United States v. Carrasco de Jesus</u>, 589 F.3d 22 (1st Cir. 2009), <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007).

The court abused its discretion and imposed a substantive unreasonable sentence. As explained before, Mr. Carrion brought to the court's attention highlighting the PSR details of his personal history and characteristics as well as a detailed description of his peripheral and limited participation in the offense.

Mr. Carrion's family responsibilities, the fact that he is the father of 4 children, his long history of gainful employment, his sincere remorse and profound concern for his inability to being able to be with his children and provide for them, did not seem to have any effect on the district court. The district court did mention the seriousness of the offense, promote respect for the law, provide just punishment for his offense, for adequate deterrence, and to protect the public form additional crimes. Only the punitive and deterrent factors seem to be the only aspects considered by the court when

imposing the sentence. The sentence imposed by the court lack a plausible sentencing rationale less a defensible overall result. <u>Martin</u>, 520 F.3d at 96. The court abuse its discretion by imposing an unfair sentence that disregarded the desired principles of 18 U.S.C. Section 3553, a sentence sufficient but not more than necessary to comply with said principles. The lack of any rationale in arriving to said sentences and the overall result is not defensible. It is a substantive unreasonable sentence considering the totality of the circumstances.

## V. CONCLUSION

The court abused its discretion by imposing a procedurally and substantively unreasonable sentence.

## VI. PRAYER FOR RELIEF

For the reasons stated in this brief, appellant Osmerlin Carrion-Cordones prays that this Honorable Court set aside the sentence imposed by the court and the case be remanded for re-sentencing before a different judge.

In San Juan, Puerto Rico, this the 21st day of July, 2024.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all interested parties/attorneys.

*S/ Ramon M. Gonzalez*
RAMON M. GONZALEZ
Attorney for Defendant-Appellant
USCA-FC 52462
P.O. Box 195493
San Juan, PR 00919-5493
Tel. (787) 593-8281/722-6930
E-mail: rmgonzalezesq@gmail.com

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Certificate of Compliance with
## Typeface and Length Limitations

Case No. **23-1798**
### UNITED STATES OF AMERICA
*Plaintiff-Appellee*

v.

### OSMERLIN CARRION-CORDONES,
*Defendant - Appellant.*

1. This brief has been prepared by using:

   \_\_\_x\_\_    14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman) using the following
   software and version and point size:
   \_Microsoft Word 97-2003, Times New Roman, 14 point\_

2. EXCLUSIVE of the corporate disclosure statement; table of content; table of citations; addendum; and the certificate of service, the brief contains:

   _____    \_\_\_\_Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

   \_\_\_X\_\_\_    8,670 Words (give specific number of words; may not exceed 13,000 words for opening or answering brief or 7,000 for reply brief);

   _____    _____Lines of Monospaced Type (give specific number of lines; may nor exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line print out.

*S/ Ramon M. Gonzalez*
**RAMON M. GONZALEZ**
Signature of Filing Party

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT
_____

Case No. **23-1798**
# UNITED STATES OF AMERICA
_Appellee_

v.

# OSMERLIN CARRION-CORDONES,
_Defendant-Appellant._
_____

# ADDENDUM TO BRIEF
_____

Ramón M. González
USCA-FC 52462
P.O. Box 195493
San Juan, PR 00919-5493
Tel. (787) (787) 593-8281/722-6930/
E-mail: rmgonzalezesq@gmail.com

_Attorney for Defendant-Appellant_
_Osmerlin Carrion-Cordones_

# INDEX TO ADDENDUM TO THE BRIEF

**Page**

Judgment     .          .          .          .          .          .          .                    1-8

AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 1

(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT

### District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Osmerlin CARRION-CORDONES (6) | Case Number:  3:22-cr-00394-06 (FAB) |
| | USM Number:  18194-510 |
| **Date of Original Judgment:**  9/13/2023 | Ramon M Gonzalez-Santiago |
| *(Or Date of Last Amended Judgment)* | Defendant's Attorney |

**THE DEFENDANT:**

☑ pleaded guilty to count(s)   Counts One (1) through Six (6) of the Indictment on 6/1/2023.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 46 USC §§70503(a)(1) & 70506(b) and 21 USC §960(b)(1)(B) | Conspiracy to Possess with Intent to Distribute Cocaine Aboard a Vessel Subject to the Jurisdiction of the United States | 9/1/2022 | One (1) |
| 46 USC §70503(a)(1), 21 USC §960(b)(1)(B), and 18 USC §2 | Possession with Intent to Distribute a Controlled Substance Aboard a Vessel Subject to the Jurisdiction of the United States | 9/1/2022 | Two (2) |
| 21 USC §§952(a), 960, 963 | Conspiracy To Import Cocaine | 9/1/2022 | Three (3) |

The defendant is sentenced as provided in pages 2 through _____8_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/14/2023
Date of Imposition of Judgment

/S/ FRANCISCO A. BESOSA
Signature of Judge

Francisco A. Besosa, Senior        U.S. District Judge
Name and Title of Judge

9/14/2023
Date

AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 1A                                                          (NOTE: Identify Changes with Asterisks (*))

Judgment — Page  2  of  8

DEFENDANT:  Osmerlin CARRION-CORDONES (6)
CASE NUMBER:  3:22-cr-00394-06 (FAB)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC §§952(a), 960 and 18 USC §2 | Attempted Importation of Cocaine | 9/1/2022 | Four (4) |
| 46 USC §§70503(a)(2) and 18 USC §2 | Jettisoning Property Subject to Forfeiture under 21 USC §881(a) while on board a Vessel Subject to the Jurisdiction of the United States, Aiding and Abetting | 9/1/2022 | Five (5) |
| 18 USC §2237(a)(1) and 18 USC §2 | Failure to Heave | 9/1/2022 | Six (6) |

DEFENDANT:   Osmerlin CARRION-CORDONES (6)
CASE NUMBER:   3:22-cr-00394-06 (FAB)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :
Eighty-seven (87) months as to each count to be served concurrently with each other.

☑    The court makes the following recommendations to the Bureau of Prisons:
   The defendant be provided of any available courses leading to receiving a GED/high school diploma, vocational training courses, English as second language courses, and the 500-hour drugs/alcohol treatment if he qualifies. The Court recommends the defendant be designated to FCI Fort Dix in NJ.

☑    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

   ☐    at  _____    ☐  a.m.    ☐  p.m.    on  _____  .

   ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐    before 2 p.m. on  _____  .

   ☐    as notified by the United States Marshal.

   ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____   to  _____

at  _____   with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 3 — Supervised Release
(NOTE: Identify Changes with Asterisks (*))

Judgment—Page __4__ of __8__

DEFENDANT:   Osmerlin CARRION-CORDONES (6)
CASE NUMBER:   3:22-cr-00394-06 (FAB)

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

Five (5) years as to Counts One through Four and three (3) years as to Counts Five and Six, to be served concurrently with each other.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     ☑   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐   You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑   You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐   You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Judgment—Page <u>5</u> of <u>8</u>

DEFENDANT:    Osmerlin CARRION-CORDONES (6)
CASE NUMBER:    3:22-cr-00394-06 (FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.    You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.    After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.    You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.    You must answer truthfully the questions asked by your probation officer.
5.    You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.    You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.    You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.    You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.    If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.    You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.    You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.    If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.    You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 3B — Supervised Release                                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___6___ of ___8___

DEFENDANT:   Osmerlin CARRION-CORDONES (6)
CASE NUMBER:   3:22-cr-00394-06 (FAB)

## ADDITIONAL SUPERVISED RELEASE TERMS

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. If deported or granted voluntary departure, Mr. Carrion shall remain outside the United States and all places subject to its jurisdiction unless prior written permission to reenter the U.S. is obtained from the pertinent legal authorities and he notifies the Probation Officer of the permission in writing. If he reenters the U.S., he must report to the nearest Probation Office within seventy-two (72) hours of his return.

3. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

(NOTE: Identify Changes with Asterisks (*))

Judgment — Page __7__ of __8__

DEFENDANT:   Osmerlin CARRION-CORDONES (6)
CASE NUMBER:   3:22-cr-00394-06 (FAB)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 600.00 | $ | $ 0.00 | $ | $ |

☐  The determination of restitution is deferred until _____ .  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

  ☐  the interest requirement is waived for  ☐  fine  ☐  restitution.

  ☐  the interest requirement for the  ☐  fine  ☐  restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:   Osmerlin CARRION-CORDONES (6)
CASE NUMBER:   3:22-cr-00394-06 (FAB)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☑ Lump sum payment of $   600.00   due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate. |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
  as indicated in the Indictment.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.